IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**RACHEL HELEN HARRIS**                                                                        **PLAINTIFF**

**V.**                                          **CIVIL ACTION NO. 4:20-CV-12-DAS**

**COMMISSIONER OF SOCIAL SECURITY**                                   **DEFENDANT**

**FINAL JUDGMENT**

Plaintiff Rachel Helen Harris filed suit under 42 U.S.C. § 1383(c) for judicial review of the unfavorable decision of the Commissioner of Social Security regarding an application for disability insurance benefits and a period of disability. Docket 1. The parties have consented to entry of final judgment by the United States Magistrate Judge under 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Fifth Circuit. Docket 10. The court, having reviewed the record, the administrative transcript, the briefs of the parties, the applicable law and having heard oral argument, finds as follows:

**FACTS AND PROCEDURAL HISTORY**

On June 7, 2017, Rachel Helen Harris filed her application for a period of disability and disability insurance benefits. After the application was denied at the lower levels, a hearing was held before an Administrative Law Judge ("ALJ") on October 18, 2018. The ALJ issued an unfavorable decision on January 9, 2019, and the Appeals Council denied review. The plaintiff timely filed this appeal from the November 20, 2019 decision and the undersigned held a hearing on September 24, 2020.

The plaintiff raises four issues on appeal: 1) whether the ALJ failed to properly evaluate the plaintiff's allegations regarding leaving work; 2) whether the ALJ failed to recognize the plaintiff's severe pain as it relates to Grid Rule 201.04; 3) whether the ALJ erred in finding the

plaintiff could return to her past relevant work; and 4) whether the ALJ "played doctor" in formulating the RFC.

## LAW AND STANDARD OF REVIEW

This court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case *de novo*, or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Harrell*, 862 F.2d at 475. If the Commissioner's decision is supported by the evidence, then it is conclusive and must be upheld. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994).

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential process. The burden rests upon the claimant throughout the first four steps of this five step process to prove disability, and if the claimant is successful in sustaining his burden at each of the first four levels, then the burden shifts to the Commissioner at step five. *Muse v. Sullivan,* 925 F.2d 785, 789 (5th Cir. 1991). First, claimant must prove he is not currently engaged in substantial gainful activity. Second, claimant must prove his impairment is "severe" in that it "significantly limits his physical or mental ability to do basic work activities . . .." At step three, the ALJ must conclude claimant is disabled if he proves that his impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1. Fourth, the claimant bears the burden of proving he is incapable of meeting the physical and mental demands of his past relevant work. If claimant is successful at all four of the preceding steps, the burden shifts to the Commissioner to prove, considering claimant's residual functional capacity, age, education, and past work experience, that he can perform other work. 20 C.F.R. § 404.1520 (2019). If the Commissioner proves other work exists which claimant can perform, the claimant is given the chance to prove that he cannot, in fact, perform that work. *Muse,* 925 F.2d at 789.

## DISCUSSION

**Issue I.    The plaintiff's allegations concerning leaving work.**

First, the plaintiff maintains that the ALJ erred in failing to properly evaluate a statement from her treating physician that she will not be able to return to gainful employment. When asked by the ALJ whether she quit working or retired, the plaintiff testified that her "doctor took [her] off work." Docket 7 at 34. The plaintiff points to a June 1, 2017 office visit with Dr. Katrina Poe in which Dr. Poe reported "[e]ncouraged patient to seek permanent disability

benefits since she will not be able to return to gainful employment." *Id*. at 316-17. The plaintiff contends that the ALJ failed to evaluate this "medical opinion" under the regulatory factors delineated at 20 C.F.R. § 404.1527(b), constituting reversible error.

As a preliminary matter, because the plaintiff's application for benefits was filed after March 27, 2017, the revised regulations for evaluating medical evidence – and not 20 C.F.R. §404.1527(b) – apply, thus mooting the plaintiff's argument that the ALJ did not utilize the correct legal standard. *See* 20 C.F.R. § 404.1520(c) ("For claims filed on or after March 27, 2017, the rules in this section apply."). The Commissioner responds, and the court agrees that Dr. Poe's statement does not constitute a "medical opinion" under 20 C.F.R. § 404.1513(a)(2) (defining medical opinion as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in your ability to perform the physical, mental, and other demands of work activities and adapt to environmental conditions). Rather, Dr. Poe's statement that the plaintiff "will not be able to return to gainful employment" is a statement regarding an issue reserved to the Commissioner which is "neither valuable nor persuasive to the issue of whether [she] is disabled." 20 C.F.R. § 1520b(c)(3) ("statements that you are … unable to return to work, or unable to perform regular or continuing work" are statements regarding issues reserved to the Commissioner and are "neither valuable nor persuasive to the issue of whether [a claimant] is disabled."). Accordingly, the Commissioner is not required to provide any analysis about how such evidence is considered in its decision.

As for the plaintiff's testimony that her "doctor took [her] off work," the ALJ acknowledged that she complained of "an inability to work due to calluses on her feet" and mentioned "that she had to leave her job at Milwaukee Tools because of pain caused by her

calluses." Docket 7 at 16. While the ALJ did not recite the plaintiff's testimony that her employer "could not accommodate [her] a seat … so [she] couldn't work," the ALJ is not required to discuss every piece of evidence in the record. *See Castillo v. Barnhart*, 151 F. App'x 334, 335 (5th Cir. 2005). The ALJ's decision addressed the plaintiff's testimony about leaving work because of her condition, and, therefore, the court finds no error as to the plaintiff's first issue.

### Issue II. Grid Rule 201.04

Next, the plaintiff argues that the ALJ did not consider her subjective complaints of pain to determine whether she would have met Grid Rule 201.04 due to an inability to return to her past relevant work. In support of this argument, the plaintiff cites records from Dr. Poe dated June 14, 2017 in which the plaintiff complains that her "[s]everity level is moderate severe" and her pain "occurs constantly and is worsening." Docket 7 at 309. Dr. Poe's "Review of Systems" documented that the plaintiff was positive for decreased mobility, joint instability, joint pain, joint swelling, joint tenderness, and limping. *Id.* at 310. Based on these records, the plaintiff argues that she could not return to her past relevant work as an assembler of small products which required constant standing and thus met Grid Rule 201.04.

The Commissioner responds that the ALJ did not ignore the plaintiff's complaints of pain but that her subjective complaints were not fully supported by the record. The ALJ discussed the plaintiff's testimony that she had to quit her job due to pain caused by calluses which she rated as a 7 out of 10 on a daily basis. *Id.* at 15. She acknowledged the plaintiff's complaints of "constant musculoskeletal pain in her bilateral feet […] described as aching, burning, dull, piercing, sharp, and throbbing," yet noted that her pain was relieved by medication. *Id.* at 16.

As discussed in the ALJ's decision, the Skin & Allergy Clinic records document that the plaintiff's callouses improved with treatment such that the plaintiff reported on January 2, 2018, that her right foot was almost healed and on April 9, 2018, that she had "no more callouses." *Id*. at 493, 495. It was not until July 2018 that she reported that her callouses had returned, however, by August 2018, the plaintiff described her symptoms and pain as "moderate" as she had on several prior occasions. *Id*. at 494, 441; *see also Id*. at 447, 450, 456 (on March 13, April 10, and May 22, 2017, the plaintiff characterized her pain as "intermittent, of moderate severity, aching, and dull"); *Id*. at 319 (on May 8, 2017, the plaintiff described her pain as moderate, intermittent, and fluctuating and relieved by pain/RX meds). The ALJ discussed the plaintiff's treatment at the Skin & Allergy Clinic and accordingly "limited the plaintiff to the medium exertional level with additional exceptions" due specifically to her foot calluses. *Id*. at 17.

There is no indication that the ALJ failed to consider the record as whole or recognize the plaintiff's testimony of pain and discomfort, as the plaintiff alleges. Substantial evidence, as outlined above, exists in the record to support the ALJ's finding that the "[Skin & Allergy Clinic] treatment records and the claimant's own statements at medical visits regarding the efficacy of treatment are inconsistent with the claimant's testimony and statements that she cannot work due to disabling foot calluses." *Id*. at 17. This court cannot reweigh the evidence and must affirm the Commissioner's decision so long as it is supported by "such relevant evidence as a reasonable mind might accept to support a conclusion." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

Additionally, the Grid Rules only apply when a claimant is incapable of performing past relevant work and the inquiry proceeds to Step Five. *Harper v. Sullivan*, 887 F.2d 92, 97 (5th Cir. 1989) ("[T]he medical-vocational guidelines ... are to be applied only when it is found that

the claimant is incapable of performing past relevant work). Accordingly, the Grid Rules are inapplicable in this case because the ALJ did not reach Step 5, finding instead that the plaintiff was able to return to her past relevant work, which leads to the plaintiff's next issue.

**Issue III.     Past Relevant Work**

Plaintiff's third argument challenges the ALJ's finding that she could return to her past relevant work as an assembler of small products. The plaintiff argues that whether she could return to her past relevant work is a "controlling issue" because at her advanced age status, she would have met the medical vocational guidelines had the ALJ determined she could not perform her past work. *See* SSR 82-62 (maintaining that "whether the claimant retains the functional capacity to perform past work […] is an important and, in some instances, a controlling issue…"). The plaintiff acknowledges that under SSR 82-62 the ALJ made a finding of fact as to her RFC but contends that "she did not provide any information as to the physical and mental demands of the past job/occupation other than the typical questions of the VE which did not address her particular job or particular needs." Docket 16 at 14; *Titles II & Xvi: A Disability Claimant's Capacity to Do Past Relevant Work, in Gen.*, SSR 82-62 (S.S.A. 1982).

SSR 82-62 recognizes that deciding if a claimant "retains the functional capacity to perform past relevant work ... has far-reaching implications and must be developed and explained fully in the disability decision." *Id.* at *3. Because this is "important and, in some instances, ... [the] controlling issue, every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit." *Id.* The ALJ's decision must provide specifics about the past work's demands and how those demands compare with the claimant's remaining capacity for work in making a Step Four decision. SSR 82-62 at * 4. As with all decisions, the ALJ must articulate the rationale underlying the decisions made in evaluating a

claim to facilitate meaningful appellate review. *Hurst v. Secretary of Health & Human Services*, 753 F.2d 517, 519 (6th Cir.1985). With Step Four determinations, an appellate court must be able to determine "how specific evidence leads to [the] conclusion" that the plaintiff has the capacity to perform past work. SSR 82-62 at *4.

When an ALJ finds that a claimant has the capacity to perform past relevant work, SSR 82-62 requires that the decision contain: (1) a finding of fact as to the individual's RFC; (2) a finding of fact as to the physical and mental demands of the past job/occupation; and (3) a finding of fact that the individual's RFC would permit a return to his or her past job or occupation. SSR 82-62, at *3. The rule requires documentation of past work experience including "factual information about those work demands which have a bearing on the medically established limitations. Detailed information about strength, endurance, manipulative ability, mental demands and other job requirements must be obtained as appropriate." *Id*.

In the present case, the ALJ fulfilled the first requirement of SSR 82-62 when she found that the plaintiff could perform medium work with some additional limitations: she could frequently climb ramps, occasionally climb stairs, never climb ladders, ropes, or scaffolds, and occasionally stoop. Docket 7 at 14. As for the second and third requirements, an ALJ is entitled to rely on VE testimony or the Dictionary of Occupational Titles (DOT) in determining whether the plaintiff can perform her past work. 20 C.F.R. §§ 404.1560(b)(2), 416.920(b)(2).

At the ALJ hearing, after obtaining testimony from the plaintiff about the actual job duties and daily activities of her past work as an assembler of small products, the ALJ asked the VE to categorize the plaintiff's past work based on the plaintiff's testimony and information in the record. *Id*. at 52. The VE testified that the assembler of small products was classified by the DOT as 706.684-022 and is a light, unskilled job. *Id*. The VE was present during the ALJ's

questioning and had heard and considered the plaintiff's testimony when he testified that a medium RFC with the limitations outlined above would allow the plaintiff to perform the light, unskilled job of assembler of small products, both as she previously performed it and as it is generally performed in the national economy. *Id*. at 53.

The ALJ properly made a finding of fact as to the mental and physical demands of the plaintiff's past work and properly relied on VE testimony to conclude that she could perform the light, unskilled job of assembler of small products based on her RFC to perform a reduced range of medium work.[1] *See* 20 C.F.R. § 404.1567 (by regulatory definition, because the plaintiff can do medium work, she can also perform light work). The ALJ considered the plaintiff's hearing testimony, the VE's testimony and conclusions, as well as application material consisting of "Certified Earning Records" (*Id*. at 149-50), "Disability Report" detailing the tasks and physical demands of her assembler job (*Id*. at 176-87), and "Work History Report" detailing tasks, responsibilities, and physical demands of her prior relevant work (*Id*. at 196-202).[2] The Step Four determination is adequately explained and the record discloses substantial evidence to support the decision.

---

[1] As noted by the Commissioner during oral argument, the plaintiff need only be capable of performing her past relevant work as it is generally performed in the national economy to for a finding of not disabled at Step Four. *Ratliff v. Astrue*, No. CIVA 1:06CV301-DAS, 2008 WL 4372746, at *4 (N.D. Miss. Sept. 19, 2008) (citing *Leggett v. Chater,* 67 F.3d 558, 565 (5th Cir.1995) ("The mere inability of a claimant to perform certain 'requirements of his past job does not mean that he is unable to perform 'past relevant work' as that phrase in used in the regulations'; rather, the Commissioner may also consider the description of the claimant's past work as such work is generally performed in the national economy.")).

[2] "Adequate documentation of past work includes factual information about those work demands which have a bearing on the medically established limitations. Detailed information about strength, endurance, manipulative ability, mental demands and other job requirements must be obtained as appropriate. This information will be derived from a detailed description of the work obtained from the claimant, employer, or other informed source. Information concerning job titles, dates work was performed, rate of compensation, tools and machines used, knowledge required, the extent of supervision and independent judgment required, and a description of tasks and responsibilities will permit a judgment as to the skill level and the current relevance of the individual's work experience." SSR 86–62 at *3.

**Issue IV.    Playing Doctor**

Finally, the plaintiff claims that the ALJ "played doctor" in determining the RFC. The plaintiff cites the ALJ's finding that the "records include a notation that the claimant would be able to return to work on June 23, 2016," yet notes that June 23, 2016 was one year prior to the plaintiff's alleged disability onset date of June 1, 2017. She further argues that the ALJ and DDS physicians ignored Dr. Poe's statement that she could not return to work and that such a failure to "review this opinion completely fails the substantial evidence standard." Docket 16 at 19.

As discussed in Issue I, Dr. Poe's statement that the plaintiff "will not be able to return to gainful employment" does not constitute a "medical opinion" under 20 C.F.R. § 404.1513(a)(2) but is a statement regarding an issue reserved to the Commissioner which is "neither valuable nor persuasive to the issue of whether [the plaintiff] is disabled." 20 C.F.R. § 1520b(c)(3). The ALJ was not required to provide any analysis about how such evidence is considered in her decision. As for the DDS physicians' opinions, the court agrees with the Commissioner that the ALJ properly considered the post-DDS opinion evidence contained in the record and found it consistent with the earlier administrative findings. In fact, based on the subsequent medical evidence, the ALJ included additional limitations in the plaintiff's RFC beyond what the DDS physicians opined. The ALJ's decision thoroughly reviewed the medical evidence of record which reflects conservative treatment for the plaintiff's impairments and supports the ALJ's RFC determination.

## V. CONCLUSION

After diligent review, the Court concludes that the ALJ properly considered the plaintiff's testimony regarding leaving work and considered the record as whole regarding the plaintiff's testimony of pain and discomfort. The ALJ properly evaluated the plaintiff's ability to return to

her prior work under SSR 82-62 and did not "play doctor" when formulating her RFC. Because the ALJ's decision was supported by substantial evidence, the Court affirms the decision of the Commissioner.

**SO ORDERED**, this the 26th day of January, 2021.

/s/ David A. Sanders
**UNITED STATES MAGISTRATE JUDGE**